### 19707. PORTER *v.* THE STATE.

ARGUED MAY 14, 1957—DECIDED JUNE 11, 1957.

*Wright & Reddick, McDonald & McDonald,* for plaintiff in error.

*Harvey L. Jay, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

ALMAND, Justice. Maxie E. Porter, under an indictment charging him with the murder of Ernest Vaughn by stabbing and cutting him with a knife, was found guilty with a recommendation of mercy, and was sentenced to life imprisonment. His amended motion for a new trial was denied, and he assigns error on this ruling.

█ Special grounds 1, 2, 3, 4, 5 and 6 assign error on the failure of the court to charge the jury upon the law of voluntary manslaughter as applicable to mutual combat. Ground 7 complains that, while the court correctly charged the law as to voluntary manslaughter, it excluded from the jury the question of whether or not the defendant and the deceased were engaged in mutual combat. We will consider all of these grounds together.

An essential ingredient of mutual combat is the mutual intent to fight. There must be a willingness, a readiness, and an intention upon the part of both parties to engage in fighting, and a fight must actually occur. Mere threats will not suffice. *Cornelious v. State,* 193 *Ga.* 25 (17 S. E. 2d 156). "Reluctance, or fighting to repel an unprovoked attack, is self-defense and is authorized by the law, and should not be confused with mutual combat." *Mathis v. State,* 196 *Ga.* 288, 291 (26 S. E. 2d 606). Where the State's evidence makes a case of murder, and the defendant's statement and his evidence shows a case of justifiable homicide, a charge upon the law of voluntary manslaughter as applicable to mutual combat is neither required nor authorized. *Randall v. State,* 210 *Ga.* 435 (2) (80 S. E. 2d 695).

The evidence discloses that, prior to the day of the killing, there had been a disagreement between the defendant and the deceased as to whether the deceased owed the defendant $5. On the day of the killing, the defendant, while visiting in a duplex house in which the deceased lived, was called out onto the porch by the deceased. Several persons in both apartments overheard a part of the conversation between the two as to the $5, but no one, other than the defendant and the deceased, was present

when the physical altercation between the parties began. Several witnesses testified for the State that, when they first saw the deceased, he had already been cut and was making no assault upon the defendant, and that the defendant was standing a few feet away from the deceased with a knife in his hand. The defendant then advanced toward the deceased and cut his throat. A witness who testified for the defendant arrived at the scene after the altercation had begun, and stated that he saw that the deceased had the defendant locked around the neck, choking him with one arm and beating him with his fist; that the defendant broke his hold, and when the deceased grabbed him again, the defendant cut his throat. In his statement to the jury, the defendant said: "Ernest he came there to the door and stuck his head in the door, didn't open the door, says, 'Come here, Maxie, a minute. I want to see you.' So I got up and walked out there just a few feet, and he turned around and said, 'Did you say that I owed you $5.00?' I says, 'Yes.' He says, 'That's a damn lie, you little son-of-a-bitch you. I'm going to kill you.' And I looked at him there, I didn't know what in the world to think. And he was drinking. I seen that he was crazy or something was wrong with him, and I looked and was going to run out the back porch there down the steps but I was afraid to attempt, afraid that he would hit me and knock me off there and probably kill me. So I turned around, and as I turned around to go back in Uncle Frank's side of the house, he hit me up there behind my left ear, and he knocked me down and my head hit the wall. So I began trying to get up from there, and he was on me kicking me. I have got a leader here that's tore loose now. There is a scar up there that he put there on my face. As I started to come up, he was kicking me, right on me, and I never did get straightened up fully. I got sort of like this, you know, and he had me up against the wall there then, and he was laying it to me for all he had. And all the time I was trying to get back in the house and get away from him. So I hollered 'Help' there twice, and by then we were sort of in the—well, we were over there at the screen door, between Uncle Frank's door and his, about halfway, there—had me up against the wall, and he was laying it to me for everything in the world he had. He

had me choking me with his left hand and he had me with his right hand and I seen that he was killing me. I worked around there and got out—I had a little old penknife—worked it out with my right hand and opened it with my right hand the best way that I could and I went to slinging, without having any knowledge whatsoever about using it or cutting him."

There was no evidence that the deceased was armed with any weapon. The evidence showed that the defendant inflicted upon the deceased the following knife wounds: one cut on the left side of the neck, severing both the carotid artery and the jugular vein; two lacerations of the left arm; another of the left abdominal wall; one cut under the left shoulder blade; and one cut in the left groin.

In our opinion, none of the evidence shows a mutual intent to fight. The statement of the defendant and the testimony of his witness were that the deceased was the aggressor, and throughout the encounter the defendant was endeavoring to defend himself against an attack by the deceased, who was taller and heavier than the defendant, and that he cut the deceased in self-defense. Neither the evidence nor the defendant's statement showed a mutual intent to fight, and the court did not err in failing to charge the law relating to mutual combat in connection with the charge on voluntary manslaughter.

■ Ground 8 assigns error on the following charge of the court: "Gentlemen, what the facts are in this case is altogether a question for you to determine under all the facts and circumstances of this case. You should take into consideration the surroundings of the parties, what was said and had been said, the language used, if any, and the motions and movements of the parties, and determine from all of those facts and circumstances whether or not this defendant acted under the fears of a reasonable person that he was in danger of some attack which in law would amount to a felony." The complaint is that the "charge was ambiguous and that the same was misleading and confusing to the jury because it would have led the jury to believe that unless the defendant acted under fears of a reasonable person that he was in danger of an attack which under the law would amount to a felony, that the jury would have been author-

ized to have convicted him and excluded from the jury the right to find this defendant guilty of voluntary manslaughter unless he was acting under the fears of a reasonable man that he was in danger of an attack which under the law would amount to a felony, which was not correct as a principle of law." The charge complained of is an excerpt from the instruction on justifiable homicide. This excerpt, when taken in connection with the entire charge on the law of justifiable homicide, was not erroneous for any of the reasons assigned.

The evidence fully supports the verdict.

*Judgment affirmed. All the Justices concur.*